Slip Op. 14 - 109

UNITED STATES COURT OF INTERNATIONAL TRADE

SHAH BROS., INC.,

       Plaintiff,

          v.

UNITED STATES,

       Defendant.

Before: Donald C. Pogue,
Senior Judge

Court No. 10-00205

OPINION AND ORDER

[granting plaintiff's motion for attorneys' fees and expenses]

Dated: September 18, 2014

     Elon A. Pollack and Kayla Owens, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, for the Plaintiff.

     Edward F. Kenny, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant.  Also on the briefs were Stuart F. Delery, Assistant Attorney General, and Amy M. Rubin, Assistant Director, International Trade Field Office.

     **Pogue, Senior Judge:**  Plaintiff Shah Bros., Inc.

("Shah Bros.") – an importer of a smokeless tobacco product from

India called "gutkha" – seeks an award of its attorney's fees,

expenses, and costs in connection with this action, pursuant to

the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (2012)

("EAJA").[1]  As explained below, because Shah Bros. was the

---

[1] Pl.'s Mem. in Supp. of its Appl. for Att'y Fees & Expenses Under the Equal Access to Justice Act, ECF No. 93-1 ("Pl.'s Br.").

prevailing party; because the agency determination upon which
this action is based was not substantially justified; and
because no special circumstances exist in this case that would
make an EAJA fees and costs award unjust, Shah Bros. is entitled
to an award of the fees and costs reasonably incurred in this
action. Accordingly, Plaintiff's motion is granted.

**BACKGROUND**

At issue in this litigation was the tariff
classification of Shah Bros.' gutkha, entered in May 2009 and
classified by U.S. Customs and Border Protection ("Customs") as
"snuff" under Subheading 2403.99.2040 of the Harmonized Tariff
Schedule of the United States ("HTSUS").[2]  In protesting this
classification, Shah Bros. argued that the merchandise instead
should have been classified as "chewing tobacco" under HTSUS
Subheading 2403.99.2030.[3]

---

[2] See Am. Compl., ECF No. 19, at ¶ 2, 57.

[3] See id. at ¶¶ 2, 92(a).  Classification as "chewing tobacco"
rather than "snuff" does not alter the applicable tariff rate
but does lower the applicable excise tax. See HTSUS 2403.99.20;
26 U.S.C. § 5701(e)(1)-(2).  The gutkha imported by Shah Bros.
"is a grayish/beige substance consisting of dry rough chunks of
betel nut pieces and bits of tobacco leaf, coated with a
powdered blend of the spices." Am. Compl. at ¶ 36.  "Snuff" is
defined as "any finely cut, ground, or powdered tobacco that is
not intended to be smoked," 26 U.S.C. § 5702(m)(2), whereas
"chewing tobacco" is "any leaf tobacco that is not intended to
be smoked." Id. at § 5702(m)(3).  According to Shah Bros., its
gutkha "is not finely cut, ground or powdered," and when "the
gutkha is rinsed in a fine mesh strainer, the spice coating is
(footnote continued . . .)

Prior to this action, in April 2009, Shah Bros. had brought an earlier suit challenging Customs' classification of previously-entered gutkha as "snuff" rather than "chewing tobacco." See Shah Bros., Inc. v. United States, __ CIT __, 751 F. Supp. 2d 1303 (2010) ("Shah Bros. I"); Pl.'s Br. at 3 (noting that "[t]he underlying facts of this case are the same as those in [Shah Bros. I]").  On November 27, 2009, the Government moved for entry of judgment in favor of Shah Bros. in that earlier case, agreeing to reclassify Shah Bros.' entries of gutkha at the tariff and tax rates applicable to "chewing tobacco," rather than "snuff," and to refund to Shah Bros. any excess duties and taxes paid, along with lawful interest.[4]

Meanwhile, after commencing its prior challenge (April 2009) but before the Government confessed judgment in that case (November 2009), Shah Bros. imported an additional entry of gutkha, which was also classified by Customs as snuff (May 2009). See Am. Compl. at ¶ 57.  Shah Bros. filed a protest of the classification of this later entry, which Customs denied

---

washed off, and the remaining components, i.e., crushed betel nut and tobacco leaf, are plainly visible and identifiable as such." Am. Compl. at ¶ 36.

[4] Def.'s Mot. for Entry of Confession of J. in Pl.'s Favor, Ct. No. 09-00180, ECF No. 34; Order, Jan. 27, 2010, Ct. No. 09-00180, ECF No. 40 (granting the Government's motion for entry of judgment in Plaintiff's favor). See also Shah Bros. I, __ CIT at __, 751 F. Supp. 2d at 1305, 1308.

on June 22, 2010. Id. at ¶¶ 2-3.  Shah Bros. then commenced this

action to challenge the denial of the protest. See id. at ¶ 5;

Summons, ECF No. 1, at 2.  Despite confessing judgment as to the

proper classification of Shah Bros.' prior entries in November

2009, the Government did not similarly confess judgment in this

case until October 28, 2013, nearly four years later. See Def.'s

Mot. for Entry of Confession of J. in Pl.'s Favor, ECF No. 81

("Def.'s Mot. to Confess J.").

## LEGAL FRAMEWORK

Under the EAJA, a party prevailing in a civil action

brought by or against the United States is entitled to an award

of the attorneys' fees and other expenses incurred by that party

in such action, "unless the court finds that the position of the

United States was substantially justified or that special

circumstances make an award unjust." 28 U.S.C. § 2412(d).

The "position of the United States," as contemplated

by 28 U.S.C. § 2412(d), "means, in addition to the position

taken by the United States in the civil action, the action or

failure to act by the agency upon which the civil action is

based." 28 U.S.C. § 2412(d)(2)(D).[5]  "The Government's 'position'

includes both the underlying agency action that gave rise to the

---

[5] Except that "fees and expenses may not be awarded to a party
for any portion of the litigation in which the party has
unreasonably protracted the proceedings." Id.

civil litigation and the arguments made during the litigation itself." DGR Assocs., Inc. v. United States, 690 F.3d 1335, 1340 (Fed. Cir. 2012) (citations omitted).

To be "substantially justified," the Government's position must have "a reasonable basis in law and fact" and be "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct." Id. at 566 n.2. Thus, "to determine whether the overall position of the United States is substantially justified, trial courts are instructed to look at the entirety of the government's conduct and [determine] whether the government's overall position had a reasonable basis in both law and fact." Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991) (footnotes omitted). "[I]n assessing the justification of the government's position, courts consider the clarity of the governing law, that is, whether judicial decisions on the issue left the status of the law unsettled, and whether the legal issue was novel or difficult." Norris v. SEC, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (per curiam) (internal quotation marks and citations omitted).

The Government bears the burden of proving that its position was substantially justified. Libas, Ltd. v. United

States, 314 F.3d 1362, 1365 (Fed. Cir. 2003).  To meet this burden, the Government must "show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1467 (Fed. Cir. 1986) (emphasis in original, citations omitted).

As for "special circumstances [that would] make an award [of fees and costs to the prevailing party] unjust," 28 U.S.C. § 2412(d), such "[s]pecial circumstances have been recognized where the government unsuccessfully advanced novel and credible legal theories in good faith." Am. Air Parcel Forwarding Co. v. United States, 12 CIT 850, 853, 697 F. Supp. 505, 507 (1988).  Such circumstances do not exist, however, where the Government advances legal theories that were previously rejected by the courts. See Fakhri v. United States, 31 CIT 1287, 1294, 507 F. Supp. 2d 1305, 1314 (2007) ("That the Government chose to relitigate an issue after [the courts] ruled against its position is not a special circumstance within the meaning of EAJA.") (footnote omitted).

## DISCUSSION

I.   Entitlement to an EAJA Fee Award

The Government argues that Shah Bros. should not be awarded its fees and costs in this case because the Government's position was substantially justified or, in the alternative,

because special circumstances make such an award unjust.[6]  Each
argument is addressed in turn.

    *A.   The Government Has Not Shown that its Position Was
       Substantially Justified.*

    First, the Government argues that its position was
substantially justified because gutkha is particularly difficult
to classify, there was no clear law on the subject, and because
Shah Bros. had described its merchandise as "ground" (a word
that appears in the statutory definition of "snuff"[7]) when
protesting the classification of the entries at issue in <u>Shah
Bros. I</u>.[8]  But while this may have been true with regard to the
entries at issue in <u>Shah Bros. I</u>, by the time Shah Bros.
protested the classification of the entry at issue here, Customs
already had the benefit of and experience from the litigation in
<u>Shah Bros. I</u>.

    In <u>Shah Bros. I</u>, the Government conceded that Shah

---

[6] Def.'s Mem. in Opp'n to Pl.'s Appl. for Att'ys Fees & Expenses
Under the [EAJA], ECF No. 96 ("Def.'s Opp'n").

[7] <u>See</u> 26 U.S.C. § 5702(m)(2) (defining "snuff" as "any finely
cut, *ground*, or powdered tobacco that is not intended to be
smoked") (emphasis added).

[8] <u>See</u> Def.'s Opp'n at 9-11 (referring to Shah Bros.' August 2008
Memorandum in Support of Protest and Application for Further
Review); <u>cf.</u> Am. Compl., Ct. No. 09-00180, ECF No. 43, at ¶ 40
(the amended complaint in the case underlying <u>Shah Bros. I</u>,
stating that, on August 12, 2008, Shah Bros. filed a Protest and
Application for Further Review of the classification of entries
at issue in that case).

Bros.' gutkha should have been properly classified as chewing

tobacco, not snuff.  See Shah Bros. I, __ CIT at __,

751 F. Supp. 2d at 1305.  Despite this concession, however,

Customs denied Shah Bros.' subsequent request to reclassify the

entry now at issue in the same manner as Customs had agreed to

classify the entries at issue in Shah Bros. I,[9] notwithstanding

the fact that the entry was of apparently materially-identical

---

[9] While it is true that, due to "the unique and continually
shifting facts of merchandise classifications, 'a determination
of fact or law with respect to one importation is not *res
judicata* as to another importation of the same merchandise by
the same parties,'" Gulfstream Aerospace Corp. v. United States,
21 CIT 1083, 1093, 981 F. Supp. 654, 664 (1997) (footnote
omitted) (quoting Schott Optical Glass, Inc. v. United States,
750 F.2d 62, 64 (Fed. Cir. 1984) (relying on United States v.
Stone & Downer Co., 274 U.S. 225 (1927))), the rationale behind
this jurisprudence does not apply where, as here, Customs
seemingly arbitrarily treats identical merchandise, imported by
the same importer and during substantially the same time period,
without any intervening change in law or fact, differently.  See,
e.g., Heartland By-Products, Inc. v. United States, 26 CIT 268,
277, 223 F. Supp. 2d 1317, 1328 (2002) (discussing the
"significant subsequent narrowing of the [Stone & Downer]
principle by statute and caselaw," and noting that the rationale
behind the Stone & Downer decision and its progeny was a narrow
concern "that a [classification] decision would create binding
law between one [importer] and Customs that would be applied to
another [importer], without giving the second [importer] a
chance to litigate any distinguishing elements"); Gulfstream
Aerospace, 21 CIT at 1094, 981 F. Supp. at 665 (distinguishing
Stone & Downer and holding that the outcome of prior litigation
regarding a challenge to Customs' specific procedure for
classifying the type of merchandise at issue in that case was
preclusive against Customs in a later litigation challenging
Customs' use of the same procedure to classify subsequent
entries of the same merchandise).

merchandise to that at issue in Shah Bros I,[10] imported by the

same importer shortly after commencement of that action.

Because Customs denied its protest and reclassification request,

Shah Bros. incurred expense to bring this legal action, which

the Government ultimately conceded in Shah Bros.' favor,

agreeing that, as in Shah Bros. I, the entry of Shah Bros.'

gutkha that is now in question should also have been properly

classified as chewing tobacco rather than snuff. See Def.'s Mot.

to Confess J.

    Given these circumstances, Customs has not established

justification for its decision, reached months after its

concession in Shah Bros. I, to deny Shah Bros.' request to

reclassify its materially-identical merchandise in the same way,

and for the same reasons, as the Government had agreed to

classify the merchandise at issue in Shah Bros. I.  The

Government makes no argument in this regard,[11] and, as no

---

[10] Compare Am. Compl. at ¶ 36 (describing the merchandise at
issue here), with, Am. Compl., Ct. No. 09-00180, at ¶ 27
(describing the merchandise at issue in Shah Bros. I).

[11] See Def.'s Opp'n at 9-11 (arguing that the Government's
position was substantially justified because "there was a
genuine dispute between the parties as to whether the gutkha fit
the definition of snuff found in 26 U.S.C. § 5702(m)(2)" but
offering no explanation or justification for Customs' decision
to deny Shah Bros.' reclassification request after conceding
this dispute in Shah Bros.' favor in the litigation underlying
Shah Bros. I).

justification is otherwise apparent, the circumstances of this case indicate that, although Customs may have been substantially justified in classifying Shah Bros.' merchandise as snuff prior to the litigation underlying Shah Bros. I, the Government has not met its burden to show that its *subsequent* denial of Shah Bros.' protest to reclassify materially identical merchandise was substantially justified.

Because Customs' unjustified decision to deny Shah Bros.' protest directly caused Shah Bros. to incur the expense of bringing this litigation, an award of fees and costs in this case furthers the remedial purpose of the EAJA, as well as its intent "to deter the unreasonable exercise of Government authority." See Ardestani v. Immigration & Naturalization Srv., 502 U.S. 129, 138 (1991).

B.   *No Special Circumstances Make an Award Unjust.*

The Government also argues, in the alternative, that special circumstances exist in this case that would make the award unjust because Customs was only trying to do its job, working in a difficult area of the law, in the absence of guiding case law, and attempting in good faith to coordinate with the Tobacco Tax and Trade Bureau ("TTB"), which is "the agency responsible for enforcing the relevant Internal Revenue

Statute for tobacco products domestically."[12]  But again, though
this all may have been true with regard to the classification of
merchandise at issue in Shah Bros. I, by the time Shah Bros.
protested the classification of the merchandise at issue here,
the Government had already agreed that such merchandise should
indeed be reclassified as chewing tobacco.  Thus the
Government's fairness argument fails for the same reasons as its
argument that its position was substantially justified – namely
that, with the benefit of and experience from the litigation in
Shah Bros. I, the Government could no longer claim good-faith
confusion with regard to a difficult question when it denied
Shah Bros.' request to reclassify an additional entry of the
same merchandise that the Government had already agreed to
reclassify in Shah Bros. I.

   *C. Conclusion*

        Accordingly, because Shah Bros. is the prevailing
party in this civil action brought against the United States;[13]

---

[12] Def.'s Opp'n at 10; see id. at 12 (arguing that an award of
EAJA fees here "would be unfair to the Government," which was
working with "a particularly puzzling product for classification
purposes," while "operating in an unsettled legal environment
. . ., with few clear standards by way of judicial precedent, or
otherwise," and "coordinating with TTB on the application of the
relevant tax statu[t]es which they jointly enforce").

[13] See Shah Bros., Inc. v. United States, __ CIT __,
953 F. Supp. 2d 1328, 1332 (2013) ("Shah Bros. III") (granting
the Government's motion to confess judgment in favor of Shah
                                    (footnote continued . . .)

because the United States has not shown that the agency action

"upon which [this] civil action is based"[14] – i.e., the denial of

Shah Bros.' classification protest after confession of judgment

in Shah Bros. I – was substantially justified; and because the

Government has not shown that special circumstances exist in

this case that would make a fee award unjust, Shah Bros. is

entitled to an award of reasonable and appropriate fees and

expenses incurred in this litigation, except insofar as there is

"any portion of [this] litigation in which [Shah Bros.] has

unreasonably protracted the proceedings." 28 U.S.C.

§ 2412(d)(2)(D).  The next question before the court, therefore,

is what constitutes a reasonable and appropriate award in this

case.

## II.  Appropriate Magnitude of EAJA Fee Award

        During a telephone conference with the parties held on

---

Bros. and explaining that "the Government has agreed to provide
all the relief that is legally available to Shah Bros. – by
reliquidating the merchandise in question at the tariff and tax
rates claimed in the amended complaint"); Judgment & Order,
ECF No. 91 (entering judgment for Shah Bros. and ordering
Customs to reclassify the subject merchandise as requested by
Shah Bros.). Cf. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)
("[P]laintiffs may be considered 'prevailing parties' for
attorney's fees purposes if they succeed on any significant
issue in litigation which achieves some of the benefit the
parties sought in bringing suit.") (internal quotation marks and
citations omitted).

[14] 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United
States" within the meaning of 28 U.S.C. § 2412(d)).

June 18, 2014, the court suggested that the parties engage in

settlement discussions regarding the amount of a reasonable and

appropriate EAJA fee award in this case, and report back to the

court on July 17, 2014. See ECF Nos. 97, 99.  When the parties

failed to reach a negotiated agreement by July 17, 2014, the

court ordered the parties to file their final arguments

regarding the appropriate number of hours and attorneys to be

compensated by an EAJA fee award, as well as the appropriate

rate of compensation. See ECF No. 100.  The parties filed their

respective statements, covered by a Protective Order, see ECF

No. 101, on August 8, 2014.[15]

---

[15] Pl.'s Statement of Remaining Issues for Pl.'s Appl. for Att'ys
Fees & Expenses Under EAJA, ECF No. 103 ("Pl.'s Stmt."); Def.'s
Resp. to the Ct.'s Request for a Concise Statement Regarding
Number of Hours, Billing Att'ys & Rate Appropriate for Pl.'s
[EAJA] Fee Claim, ECF No. 102 ("Def.'s Stmt.").  The Government
moves to strike a portion of Shah Bros.' filing that reveals
certain statements made during settlement negotiations.
[Gov't's] Mot. to Strike, ECF No. 104 (relying on Fed. R. Evid.
408(a)(2) (statements made during settlement negotiations may
not be used to prove a claim)).  As the parties were unable to
reach agreement, the court has decided this matter on the basis
of the evidence presented, without relying on any confidential
statements made while attempting settlement.  The Government's
motion is therefore denied as moot.  In addition, Shah Bros.
correctly points out that the Government may not raise new
arguments at this stage, beyond the scope of its original
opposition to Plaintiff's fee application, see Pl.'s Stmt. at 3
n.2; Def.'s Stmt. at 2-4, and the court accordingly has not
considered these new arguments. Cf., e.g., Stauffer v. Brooks
Bros. Grp., Inc., 758 F.3d 1314, 1322 (Fed. Cir. 2014)
(declining to consider new arguments raised for the first time
in a reply brief) (citing DSND Subsea AS v. Oceanografia, S.A.
de CV, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008)).

The parties' main point of contention regards the hourly rates to be used to calculate the fee award. Plaintiff claims - and the Government objects to - a "special factor" exception to the general statutory cap on the hourly rate at which EAJA fee awards are to be calculated.[16]  Specifically, the statute provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living *or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee*." 28 U.S.C. § 2412(d)(1)(D)(2)(A)(ii) (emphasis added).  A "special factor" enhancement based on the "limited availability of qualified attorneys" is appropriate where the attorneys involved have "some distinctive knowledge or specialized skill [necessary] for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation," and such necessary qualifications can only be obtained at rates in excess of the statutory cap. Pierce, 487 U.S. at 572 (construing 28 U.S.C. § 2412(d)(1)(D)(2)(A)(ii)).

This Court has previously held that, "[a]lthough cases involving customs law are not automatically worthy of elevated attorneys' fees," a special factor fee enhancement may be

---

[16] Pl.'s Br. at 19-22; Def.'s Opp'n at 13-15.

appropriate where specialized skills in customs law are both
necessary and limited. Libas, Ltd. v. United States, 27 CIT
1193, 1197, 283 F. Supp. 2d 1327, 1332 (2003); see also Jazz
Photo Corp. v. United States, 32 CIT 1293, 1297, 597 F. Supp. 2d
1364, 1369 (2008) ("The court considers customs law to be a
specialized practice area, distinct from general and
administrative law, for purposes of EAJA.") (citation omitted).[17]
Moreover, here, as held above, an EAJA fee award is warranted
because this litigation resulted from the Government's
unjustified denial of Shah Bros.' protest to reclassify an
additional entry of merchandise that is materially identical to
the entries that the Government had already agreed to reclassify
seven months earlier, in Shah Bros. I.  As the Government
emphasizes, Shah Bros. I presented "particularly difficult"
Customs classification issues,[18] which Shah Bros.' counsel
successfully helped to resolve in Shah Bros.' favor.  And while
the material identity of the merchandise and circumstances
surrounding the additional entry at issue here arguably should

---

[17] Here, as in Jazz Photo, "the credentials and expertise of
plaintiff's attorneys in customs law" are not in dispute.
See Jazz Photo, 32 CIT at 1297, 597 F. Supp. 2d at 1369; Def.'s
Opp'n, ECF No. 96, at 13-16 (arguing that specialized customs
knowledge was not necessary to this litigation, without
challenging the expertise of plaintiff's attorneys).

[18] Def's Opp'n at 10.

have made this a simple and straightforward case for the

Government, it is precisely this continuity with Shah Bros. I

that necessitated the specialized expertise of Plaintiff's

counsel to challenge the denial of Shah Bros.' protest on the

same grounds as Shah Bros. I.[19]

    Thus here there was an extremely "limited availability

of qualified attorneys for the proceedings involved" because the

qualified attorneys were those customs attorneys familiar with

the legal theories and proceedings in, and the facts underlying,

Shah Bros. I.  Accordingly, on the particular facts of this

---

[19] Cf. Diamond Sawblades Mfrs. Coalition v. United States,
__ CIT __, 816 F. Supp. 2d 1342, 1361 (2012) (explaining that,
in that case, the plaintiff had "succeeded in the judicial
process that resulted in administrative reversal on remand of
the original [agency] determination, . . . [but] Commerce
subsequently refused to issue an antidumping duty order and
begin the collection of cash deposits, which forced [the
plaintiff] to file the underlying litigation seeking mandamus,
on which [the plaintiff] prevailed, and on which this EAJA
petition [was] solely concerned," and holding that while
"[s]eeking mandamus as a general matter is a process well within
that which would be considered the general lawyerly knowledge
and ability useful in all litigation, . . . obtaining the writ
in this instance required the distinctive knowledge or
specialized skill of an international trade law attorney in
order to successfully prevail") (emphasis in original, internal
quotation marks and citations omitted); see also id. ("Members
of the international trade bar are expected to (and do) have a
solid understanding of the interrelationship of U.S. and customs
laws and administration as applied to international trade.").
Plaintiff's counsel in this case has represented Shah Bros.'
international trade related interests for nearly 20 years,
including in the successful Shah Bros. I litigation. Decl. of
Elon A. Pollack, ECF No. 93-2 ("Pollack Decl.") at ¶ 12.

case, "the limited availability of qualified attorneys for the proceedings involved" is a special factor that "justifies a higher fee" than $125 per hour.[20]

For its counsel's specialized work, Shah Bros. seeks attorneys' fees ranging from $375 per hour to $595 per hour.[21] In support of the reasonableness of these rates, Shah Bros. submits affidavits from partners at three firms whose practice is "exclusively in the area of customs and international trade matters."[22] Each partner independently attests that there are approximately 200 Customs law practitioners in the U.S., and that the hourly rates customarily charged for experienced attorneys who specialize in these areas of law are generally "not less than $300 per hour and range up to more than $700 per

---

[20] See 28 U.S.C. § 2412(d)(1)(D)(2)(A)(ii); Pierce, 487 U.S. at 572.

[21] Ex. A to Pollack Decl., ECF No. 93-2 ("Compilation of Attorney fees re: Shah Brothers, Inc. v. U.S. Court No. 10-00205"). Specifically, "JCS" - an associate with 6 years of experience - was billed at $375 per hour; "KO" - an associate with 12 years of experience - was billed at $425 per hour; "XL," with 16 years of experience, was billed at $475 per hour; "BNS," with 37 years of experience, was billed at $525 per hour; "JPC," with 36 years of experience, was billed at $595 per hour; and "EAP," with 41 years of experience, was billed at $475, $495, and $595 per hour. Id.; Pollack Decl., ECF No. 93-2 at ¶ 9; Ex. B to Pollack Decl., ECF No. 93-3 (Attorneys' Resumes).

[22] Ex. F to Pollack Decl., ECF No. 93-3 (Decls. of Erik D. Smithweiss, Evelyn Suarez, and Jonathan M. Fee) at respective ¶¶ 3.

hour."[23]  Each affiant also declares that associates are billed
depending on their level of experience – ranging from $225 to
$525 per hour at one firm, $225 to $360 at the second firm, and
$300 to $550 at the third firm – with two of the three partners
emphasizing that attorneys with ten or more years of experience
are usually billed at the higher end of that range.[24]  With
regard to more experienced, partner-level attorneys, the
affiants declare that senior partners at their firm charge "as
high as $900", "as high as $645", and "[sometimes] higher than
$700" per hour for Customs-related matters.[25]

        Although the Government opposes Shah Bros.' claim to
an award at the $375 to $595 per hour rates billed by its
attorneys, the Government has submitted no evidence to
contradict these experienced practitioners in the specialized
field of Customs law.  Thus, these affidavits corroborate Shah
Bros.' claim that attorneys' fees ranging from $375 to $595 per
hour are within the range of rates customarily charged for legal
work in this field.  But fitting within a customary range does
not necessarily mean that the claimed rates, which fall at the
higher end of that customary range, are reasonable in this

---

[23] Id. at respective ¶¶ 4-5.

[24] Id.

[25] Id.

particular case.  As the evidence here establishes that the

customary rates charged for legal work in this field normally

range from $300 to $700 per hour, with rates for associates with

less than ten years of experience billed as low as $225,[26] and as

there is no evidence to situate the relative complexity of this

case as compared to the type of legal work at either the high or

the low end of that range, a cap at $450 per hour for the more

experienced attorneys, and $300 per hour for attorneys with less

than ten years of experience, appears both sufficient and

reasonable on the evidence presented here.[27]

        In addition, the EAJA compensation to which Shah Bros.

is entitled in this case does not cover *all* of its incurred

litigating expenses in this action.  As the court opined in

granting the Government's motion for confession of judgment, the

live controversy at issue here was solely the liquidation of an

entry of Shah Bros.' merchandise at the tariff and tax rates

applicable to snuff, rather than chewing tobacco.  From Customs'

---

[26] Id.

[27] Only JCS, whose time was billed at $375 per hour, had less
than ten years of experience.  Accordingly, JCS's compensable
hours shall be compensated at $300 per hour.  All other
attorneys' compensable hours shall be compensated at a maximum
of $450 per hour.  The only attorney other than JCS who was
billed at less than $450 per hour was KO, who was billed at $425
per hour.  Because KO had more than ten years of experience,
KO's compensable hours shall be compensated at $425 per hour as
billed.

denial of Shah Bros.' classification protest until the
Government's ultimate agreement to reliquidate in this case,
Shah Bros. incurred litigating expenses to achieve the same
treatment of this entry as would have resulted from the
Government's grant of Shah Bros.' protest on the same basis as
the Government's decision to reclassify materially-identical
entries in response to the challenge in Shah Bros. I.  From this
it follows that an award of those litigating expenses that are
directly related to or caused by the Government's apparently
unjustified delay in agreeing to reclassify this additional
entry after it had agreed to do so with regard to the five prior
materially-identical entries in Shah Bros. I would serve the
EAJA's remedial and deterrent purposes, by compensating Shah
Bros. for the litigation expenses unnecessarily incurred to
correct an unjustified agency decision and thereby deterring the
Government from unreasonably exercising its authority.  But it
also follows that an award relating to litigating expenses that
were *not* directly caused by the Government's delay in agreeing
to reliquidate this entry would *not* serve these purposes.[28]

---

[28] See also Libas, 27 CIT at 1198, 283 F. Supp. 2d at 1333 ("It
is well grounded that attorneys' fees apply only to the
proceedings surrounding the action at hand.") (citing Gavette,
808 F.2d at 1461; Cox Const. Co. v. United States, 17 Cl. Ct.
29, 36 (1989)).  As previously noted, EAJA fees and expenses
"may not be awarded to a party for any portion of the litigation
in which the party has unreasonably protracted the proceedings."
(footnote continued . . .)

Accordingly, the fee award may not cover hours that were not reasonably and unambiguously related to effecting the reclassification of the entry in question in accordance with the outcome in Shah Bros. I.[29]

In this regard, the Government correctly identified the entries in Plaintiff's itemized attorneys' bill that are not compensable by an EAJA fee award in this case because they were related to an unsuccessful separate claim; involved work not reasonably related to the case; involved unreasonably vague time entries; involved clerical work billed at attorney rates; reflected overstaffing or duplicative work; involved work on

---

28 U.S.C. § 2412(d)(2)(D).  Here, Shah Bros. opposed the Government's motion for entry of judgment in Shah Bros.' favor, which sought to provide all of the relief legally available to Shah Bros. by reliquidating the subject merchandise as requested in Shah Bros.' amended complaint. See Shah Bros. III, __ CIT at __, 953 F. Supp. 2d at 1329-30.  In granting the Government's motion over Shah Bros.' opposition, the court concluded that, "the Government having agreed to redress the Plaintiff in full, no controversy or injury remains for the court to address," id. at 1332, and, accordingly, "[b]ecause this Court decides legal questions only in the context of actual cases or controversies, the Government's agreement to reliquidate the subject entry as 'chewing tobacco' under HTSUS Subheading 2403.99.2030 [as requested in Shah Bros.' amended complaint] concludes this litigation." Id. at 1330 (citing U.S. Const. art. III, § 2; Alvarez v. Smith, 558 U.S. 87, 93 (2009) (holding that an abstract legal dispute regarding the lawfulness of Governmental procedures "falls outside the scope of the constitutional words 'Cases' and 'Controversies'" when such dispute "is no longer embedded in any actual controversy")).

[29] See Def.'s Opp'n at 16-21.

unfiled motions; and involved unnecessary work protracting the

litigation.[30]  Each of these suggested amendments to the itemized

fee bill is reasonable, for the individualized reasons the

Government provides.[31]  The fee award in this case shall

accordingly be calculated in accordance with the Government's

amendments to Shah Bros.' itemized fee bill, as detailed in ECF

Nos. 96-2 and 96-3, with the exception of entries relating to

time spent traveling to and from depositions.[32]

---

[30] Id. See ECF Nos. 96-2 & 96-3 (reproducing Plaintiff's itemized
attorneys' bill, ECF No. 93-2, and highlighting each challenged
entry and providing explanations and authority for each
challenge).

[31] For example, the Government suggests the exclusion of entries
billing for work related to Plaintiff's "unsuccessful separate
claim based upon [28 U.S.C. §] 1581(i) jurisdiction against the
Tobacco Tax and Trade Bureau for which the Court ultimately
found no jurisdiction." Ex. 5 (Shah fee bill annotated to show
hours and rates contested by the Government) to Def.'s Opp'n,
pt.1, ECF No. 96-2, at 2 (citing Hensley, 461 U.S. 424 (no fee
awarded on unsuccessful separate claim); Traveler Trading Co. v.
United States, 13 CIT 380, 713 F. Supp. 409 (1989) (no fee award
for unsuccessful defense against defendant's partial motion to
dismiss for lack of jurisdiction)); see also, e.g., Ex. 5 to
Def.'s Opp'n, pt. 2, ECF No. 96-3, at 41 (arguing that a special
factor enhancement is not warranted for time spent in
preparation of the EAJA petition (citing Diamond Sawblades,
__ CIT at __, 816 F. Supp. 2d at 1362 ("Attorney's fees are not
entitled to a special factor enhancement for the time spent in
preparation of the EAJA petition.") (citing Ragan v. Comm'r of
Internal Revenue, 210 F.3d 514, 518-19 (5th Cir. 2000)))).  For
a complete inventory of the Government's challenges, see Ex. 5
to Def.'s Opp'n, pts. 1 and 2, ECF Nos. 96-2 and 96-3.

[32] With regard to travel time, the Government objects to an
enhanced rate because the relevant entries in the itemized bill
do not state that the attorney was performing work relevant to
                                (footnote continued . . .)

### CONCLUSION

Upon careful review of all filings and proceedings had in this action, the court concludes that an award of Plaintiff's reasonable legal fees, incurred as a direct result of the Government's unjustified action that lead to this litigation, is appropriate pursuant to the EAJA.  Because the litigation required special expertise of limited availability, awarding compensation for fees billed at hourly rates exceeding the normal statutory cap of $125 per hour is justified, and the evidence suggests that rates up to $300 for attorneys with less than ten years of experience, and up to $450 per hour for more experienced attorneys, are reasonable in this case. Accordingly, Plaintiff shall be awarded its attorneys' fees, for the hours and at the rates specified in this opinion – i.e., the hours and rates detailed in ECF No. 93-2, as amended by the Government's edits, ECF Nos. 96-2 and 96-3, with the exception for the government's challenges to entries referring to

---

this litigation while traveling, see, e.g., Ex. 5 to Def.'s Opp'n, pt. 1, ECF No. 96-2, at 28, but Shah Bros. explains that the entries include work relating to the depositions. See Pl.'s Stmt., ECF No. 103, at 5.  Thus the contested travel entries shall be compensated at the enhanced rates.  However, time spent in preparation of the EAJA petition shall be compensated at the normal statutory cap of $125 per hour. See Diamond Sawblades, __ CIT at __, 816 F. Supp. 2d at 1362 ("Attorney's fees are not entitled to a special factor enhancement for the time spent in preparation of the EAJA petition.") (citations omitted).

deposition travel time.  The parties shall calculate the

resulting amount certain and submit a joint statement stating

such amount by October 2, 2014.  In addition, Shah Bros. is

entitled to an award of its costs and expenses, in the amount of

$10,586.79,[33] which was not contested.[34]

It is SO ORDERED.


/s/ Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: September 18, 2014
       New York, NY

---

[33] See Pollack Decl., ECF No. 93-2, at ¶ 5; Ex. A (expenses) to
Ex. A (compilation of attorneys' fees) to Pollack Decl.,
ECF No. 93-2.

[34] See Def.'s Opp'n (making no argument with respect to
Plaintiff's claim for costs).